SO ORDERED.

Dated: June 21, 2013

Eddward P. Ballinger Jr., Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Greenbelt Property Management, LLC  -  Chapter 11 |
| Case No.: | 2:07-bk-00790-EPB |
| Adversary Name: | Greenbelt Claims Recovery, LLC v. Transnation Title Insurance Company, et al. |
| Case No.: | 2:09-ap-00218-EPB |
| Subject of Matter: | Securities Issue |
| Date Matter Taken Under Advisement: | May 14, 2013 |
| Date Matter Ruled Upon: | June 21, 2013 |

    Defendant Transnation Title Insurance Company ("Transnation") requests that the Court summarily dispose of claims brought by plaintiff Greenbelt Claims Recovery, LLC ("GCR") that arise out of allegations that the offering of investment opportunities in promissory notes and "trust deed" programs by entities owned and/or controlled by Michael B. Eckerman (collectively

1

referred to as "Eckerman") constituted the offer and sale of securities under the Securities Act of 1933 and the Arizona Securities Act. For the reasons set forth below, this request will be denied.

## FACTS

Count XI of Greenbelt's Amended Complaint alleges that the "investment opportunities presented to lienholders constitute [sic] securities" as defined by A.R.S. § 44-1801(26). Complaint at ¶ 193. GCR also alleges that "Eckerman sold real property investment contracts secured by mortgages or deeds of trust with guaranteed rates of return" *Id.* and, that pursuant to A.R.S. § 44-1991, "Transnation, in connection with transactions involving offers to sell or buy securities, directly or indirectly, did the following: employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or, engaged in transactions, practices and course of business which operated as a fraud or deceit." *Id.* at ¶194.

The parties agree that Eckerman, through his companies, induced individuals and entities to invest in transactions in which, in exchange for their funds, the investors received an interest in a promissory note secured by a deed of trust on a residential property. The notes had fixed interest rates and maturity dates, and investors were permitted to select the real property securing their investment.

## DISCUSSION

### Are the Notes Securities?

The parties agree that Arizona law is applicable to this case. The investments offered by Eckerman are governed under the Arizona Securities Act if the notes the investors were given were securities. A.R.S. § 44-1801(26) (any note is a security), *State v. Tober,* 173 Ariz. 211,

2

213, 841 P.2d 206, 208 (Ariz. 1992). While Arizona and federal law generally treat promissory notes as securities, notes secured by real property, e.g. loans securing the purchase of a residence, are often exempt from securities regulation. A.R.S. § 44-1843(A)(10); *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945 (1990).

In *MacCollum v. Perkinson*, 185 Ariz. 179, 913 P.2d. 1097 (Ariz. App., Div.1, 1996) the court considered claims arising out of the sale of "investment interests" in a promissory note. The note was eventually secured by a junior lien on real property. *Id*. at 182. When the borrowers were unable to pay the debt, the holder of the note sued to collect the debt and enforce its collateral interests. *Id*. *MacCollum* subsequently attempted to assert a claim for violations of the Arizona Securities Act, including both registration violations and fraud in the sale of securities. *Id*. at 183. The trial court held that the case did not involve a security and the borrower appealed. *Id*. at 185. Although, as in this case, the note was eventually secured by an interest in real property, the court applied the four-factor test announced by the Supreme Court in *Reves* to determine if the securities laws applied. *Id*. at 186. Although the *Reves* case involved application of federal securities law, Arizona courts look for guidance from federal cases because the Arizona Securities Act tracks the federal definition of "security." *Id.; Siporin v. Carrington*, 200 Ariz. 97,101, 23 P.3d 92, 96 (Ariz.App.Div.1 2001).

Both the Arizona and federal statutes define security to include "any note." A.R.S. §44-1801(26); *MacCollum*, 185 Ariz. at 187. Thus, the *Reves* test begins with the presumption that any note is a security. *Id*. But the *Reves* court also articulated a list of transactions involving promissory notes in which the note will not be considered a security. *Id*. When a dispute arises regarding a note, the court must determine if the note bears a strong resemblance to one of the

3

transactions on the non-security list. If it does, then it is not a security. *Id*. Among the items on the list: "notes secured by a home mortgage." *Id*. (citing *State v. Tober,* 173 Ariz at 212, n.3).

The notes offered by Eckerman were each secured by a deed of trust on a residential property and Transnation argues the court's inquiry into the securities law can cease because the notes, on their face, fall squarely within the judicially created exception from securities regulation recognized for "note[s] secured by a mortgage on a home." *Reves*, 494 U.S. at 65. This position prevails only if the transactions giving rise to the notes bore a "family resemblance" to one of the judicially created list of exceptions.

Both federal and Arizona case law reject Transnation's simplistic application of the *Reves* test and require that courts look beyond original labels when identifying what it is about an instrument that makes it a security. See *S.E.C. v. Wallenbrock*, 313 F.3d 532, 536-537 (9th Cir. 2002); *Pollack v. Laidlaw Holdings*, *Inc*., 27 F.3d 808, 811-812 (2nd Cir. 1994)(applying *Reves* to mortgage interests sold despite the exception for a note secured by a mortgage on a home). While the notes and trust deeds given by Eckerman to some investors may appear to fall within the judicially created exception, the nature of the Eckerman investment programs dictates that the four *Reves* factors apply.

The first *Reves* factor requires that the court examine the motivations of the seller and buyer. *Reves*, 494 U.S. at 66. If the seller's purpose was to raise money and the buyer's purpose to profit from the note, the instrument is likely a security. *Id*. Second, one must examine the "plan of distribution" of the instrument to determine if there was common trading or speculation in the instrument. *Id*; *MacCollum*, 185 Ariz. at 187. Third, there must be consideration of the reasonable expectations of the investing public. *Reves*, 494 U.S. at 66. Finally, does another regulatory scheme exist that serves the same function as the securities statutes? *Id*. at 67.

4

In this case, the first factor indicates that the instrument was a security. Eckerman's primary purpose was to raise money for general business needs. The fact that the business may have been an illegal enterprise supports the view that the notes were securities. But, even if the Eckerman activities were legitimate, it is clear the investors' primary expectation was to profit from the loans through, among other things, the notes' short terms and above-market interest rates. The motivations of the lenders and Eckerman were more readily aligned with those associated with an investment, as opposed to a traditional loan secured by a home mortgage.

The second factor also supports a finding of a security. The notes were marketed in newspaper ads to a large segment of the public. While some lenders were long-time Eckerman investment partners, a number of them were individuals who responded to the advertisements. Transnation argues that because the loans were customized to the individual lenders and there was no trading of the loan instruments, there was no plan of distribution. This argument is inconsistent with the court's interpretation of the *Reves* test as applied in *MacCollum*, discussed supra.

The third factor considers the reasonable expectations of the investing public. The investments were advertised as "whole notes" secured by promissory notes and trust deeds. Eckerman marketed the notes as "investment opportunities." While investors may not expect notes secured by real property to be a security, the use of the terms "investment opportunity" and "lending opportunity" in the marketing materials suggests the instruments were securities. GCR argues that this aggressive marketing by Eckerman favors a finding of a security. Transnation argues that because Eckerman always made clear the notes were secured, this factor weighs toward a finding that the notes were not securities.

The Court finds that the first three *Reves* factors support a finding that the Eckerman notes were securities. The final factor looks to the existence of another regulatory scheme protecting the public. It is undisputed that the Eckerman notes were secured by deeds of trust and assignments of rents. The presence of state law mechanisms, both judicial and non-judicial, for protecting investments of the type at issue here argues in favor of a finding that the notes were not securities.

## Are the Notes Investment Contracts?

A "real property investment contract" is defined by Arizona statute as:

> A contract for the sale or purchase of a promissory note secured directly or collaterally by a mortgage, deed of trust or other lien on real property, including a contract as defined by section 33-741, or any agreement, arrangement or understanding in connection with such note, lien or contract in which a person agrees, implies to do or does any of the following, whether or not the investor is aware that any of the following actions are contemplated or taken:
> (a) Guarantee the note, lien or contract against loss at any time.
> (b) Promise to provide a market for the sale of the note, lien or contract, in connection with a sale or purchase.
> (c) Offer to accept or accept funds for investment in notes or contracts secured directly or indirectly by a lien on real property, where the real property is unspecified at the time of investment.
> (d) Pay any interest or premium for a period before actual purchase and delivery of the note or contract.
> (e) Pay any money to an investor if the note or contract is in arrears.
> (f) Guarantee that principal or interest will be paid in conformity with the terms of the note or contract.
> (g) Accept, from time to time, partial payment toward the purchase of the note or contract.

(h) Promise to repurchase the note or contract, in connection with sale or purchase.

   A.R.S. § 44-1801(18).

According to the statute, in order to be a real property investment contract, the contract must be for the sale or purchase of a promissory note and must possess at least one of the characteristics set forth in the statute. GCR claims that the Eckerman notes fell within subsections (a) and (f) "as any agreement, arrangement or understanding in which [Eckerman] agreed to guarantee the note against loss, with payment of principal and interest paid in conformity with the terms of the note." *Pl's Memo in Support of Summary Judgment*, DN 470, at P.13. This appears to be a misinterpretation of the statute. There are no Arizona cases interpreting this statute. This Court finds that the Eckerman notes do not contain any of the statutory attributes that are requisite to finding that they constitute investment contracts.

In their supporting memoranda, the parties examined the Supreme Court holding in *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct 100 (1946) and analyzed whether or not the notes are investment contracts. This case is clearly inapplicable here. The undisputed facts establish that the notes were individual promissory notes, each secured by a deed of trust. *Howey* articulates a three-part test to determine if an instrument is an investment contract. But the Supreme Court in *Reves* made clear that *Howey* is inapplicable if the instrument in dispute is a note: "We reject the approaches of those courts that have applied the *Howey* test to notes; *Howey* provides a mechanism for determining whether an instrument is an 'investment contract'." *Reves*, 494 U.S. at 64. The *Reves* test is the appropriate analysis in this case.

7

## CONCLUSION

GCR asserts a large number of claims, many of which involve different factual circumstances. This Court finds that, at least with respect to GCR's predecessors whose relationship with Eckerman was simply that of passive investors purchasing investment opportunities, application of the test set forth in *Reves* dictates a finding that the Eckerman notes were securities and, therefore, GCR's securities claims may be pursued as part of this case.